**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-8064**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JERMARL ALBERT JONES, a/k/a Jamal Miles,

Defendant – Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Catherine C. Blake, District Judge. (1:06-cr-00057-CCB-3; 1:10-cv-02771-CCB)

Argued: October 29, 2014              Decided: December 19, 2014

Before GREGORY, AGEE, and DIAZ, Circuit Judges.

Vacated in part and remanded with instructions by unpublished per curiam opinion.

**ARGUED**: Neal Lawrence Walters, SCOTT KRONER, PLC, Charlottesville, Virginia, for Appellant. John Francis Purcell, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF**: Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jermarl Albert Jones was convicted of conspiracy to possess with the intent to distribute heroin, and his conviction was affirmed on appeal. United States v. Jones, 345 F. App'x 872 (4th Cir. 2009). Subsequently, Jones filed a motion to set aside, vacate, or correct his sentence under 28 U.S.C. § 2255, which the district court denied. United States v. Jones, No. 1:10-cv-02771-CCB, 2012 WL 5832461 (D. Md. Nov. 14, 2012). We granted a certificate of appealability on the question of "whether [Jones' trial] counsel rendered ineffective assistance by failing to argue that Jones had standing to move to suppress [certain] evidence seized" and later used at Jones' trial. See Order, United States v. Jones, No. 12-8064 (4th Cir. Apr. 24, 2014), ECF No. 16. Based on the record -- or rather, the lack of a record permitting adequate appellate review -- we conclude that an evidentiary hearing is warranted. For that reason, we vacate the district court's order in part[1] and remand with instructions to grant Jones an evidentiary hearing on his ineffective assistance of trial counsel claim.

---

[1] Before the district court, Jones also argued that his appellate counsel rendered ineffective assistance. Because we did not grant a certificate of appealability as to that issue, the district court's judgment as to appellate counsel is unaffected.

2

I.

We review the district court's legal conclusions de novo. United States v. Poindexter, 492 F.3d 263, 267 (4th Cir. 2007). When the district court denies § 2255 relief without conducting an evidentiary hearing, we review the facts in the light most favorable to the § 2255 movant. Id. We also review a district court's failure to conduct an evidentiary hearing for abuse of discretion. Cf. Conaway v. Polk, 453 F.3d 567, 582 (4th Cir. 2006) (applying abuse-of-discretion standard in § 2254 appeal). But see United States v. Lemaster, 403 F.3d 216, 221 n.3 (4th Cir. 2005) (suggesting that standard of review may be an open question in § 2255 context).

II.

In 2005, a federal grand jury indicted Jones, Calvin Wright, and Johnnie Butler for possession with intent to distribute heroin and conspiracy to possess with intent to distribute heroin. The indictments resulted from the arrests of the three codefendants when a police officer and a property manager entered Apartment H of the Breezy Tree Court apartment complex in response to complaints of loud music. They found no furnishings in the apartment except two plastic tables covered in a white powder residue, drug-cutting materials, and other items indicating that it was being used to manufacture illegal

3

drugs. Police obtained a search warrant, and the subsequent search revealed more than $100,000 worth of heroin and other evidence that the apartment was a drug stash house. Police then observed two black males drive up and approach the apartment. As the driver, Calvin Wright, used a key to open the door to Apartment H, police arrested both he and Jones, the car's passenger. At the time of arrest, Wright held a key to the apartment, but Jones did not. Continued surveillance of the apartment led to the arrest of Butler, who also had a key to Apartment H when arrested.

Wright moved to suppress the evidence found in the search and testified at his suppression hearing that the apartment leaseholder -- Linnea Worthington -- rented Apartment H for him. Wright also testified that Worthington gave him one of two keys to the apartment and that Butler had the other. In addition, Wright said that he had paid the apartment's rent and had been in the apartment by himself, had slept on the floor twice, and would have slept in the apartment on the night of the arrest. According to Wright, Jones did not have a key to the apartment. Because authorities had been unable to locate Jones to arrest him on the federal indictment, neither Jones nor his counsel attended the hearing.

Based on Wright's testimony, the Government conceded that Wright had a legitimate expectation of privacy in Apartment H --

4

and therefore had standing to challenge the search. Based in part on that concession, the district court then suppressed the Apartment H evidence as to Wright as the product of an unreasonable search. The Government later dropped its case against Wright and, eventually, Butler as well.

In 2007, federal agents arrested Jones while he was staying in a hotel room booked under Worthington's name. Unlike Wright, Jones' counsel did not move to suppress the Apartment H evidence -- although he did challenge, unsuccessfully, two post-arrest searches of other apartments. Instead, Jones' counsel, Stanley Needleman, conducted Jones' defense on the theory that the Government could not prove a connection between Jones and Apartment H.

At trial, Needleman argued that Jones should be acquitted because the Government could not prove a connection between Jones and Apartment H. In response, the Government presented evidence showing Worthington as the leaseholder on the Apartment H lease and noted that Jones was staying at a hotel under her name at the time of his arrest. Needleman sought to discredit this connection by emphasizing that the Government did not present Worthington's testimony at trial or otherwise connect Worthington to Jones. Jones' first trial ended in a mistrial, but a second jury found him guilty of the conspiracy charge.

5

Following an unsuccessful direct appeal, Jones filed a § 2255 motion contending that Needleman's failure to move to suppress the Apartment H evidence was ineffective assistance of counsel. In support, Jones filed his own affidavit and two from Worthington, all of which were short, bare-bones documents. In pertinent part, Jones' affidavit states:

> I told Mr. Needleman that the apartment at 10 H BREEZY TREE Court was rented by My Girlfriend Ms. Linnea Worthington, and that I let Calvin Wright and Johnny Butler use it from time to time.
>
> I told Mr. Needleman that I wanted him to suppress the evidence found at 10 H BREEZY TREE Court and he stated that that would be to[o] risky a strategy.
>
> Mr. Needleman added that in order for me to suppress evidence from BREEZY TREE Court, I would have to show that I was connected in a meaningful way to that apartment.
>
> Mr. Needleman stated that if I took the stand at suppression, any admission of or ties to BREEZY TREE Court would be used at Trial to prove my guilt.
>
> I relented.
>
> Mr. Needleman assured me that there was no consequential evidence linking me to the crime of conspiracy so he was not going to complicate the matter by introducing any evidence that would tie me to BREEZY TREE Court.

(J.A. 269.)

Worthington's two affidavits covered less than one page of statements combined. Worthington represented that she rented Apartment H for Jones at his request and "Mr. Jones had total dominion and control over the said premises and paid the rent

6

and all other attendant expenses." (J.A. 273.) She also stated that she did not give Butler and Wright keys or know how they obtained keys.

The Government presented no evidentiary exhibits. Of particular note, there was no affidavit from Needleman and no explanation for its absence in the record.

Without holding an evidentiary hearing, the district court denied Jones' § 2255 motion. The district court determined that Needleman's decision not to move to suppress was a "virtually unchallengeable" "strategic decision" and reflected competent legal counsel because moving to suppress would have (1) required Jones to admit a connection to the apartment and (2) provided a witness (namely, Worthington) who the Government had otherwise been unable to find. Jones, 2012 WL 5832461, at *2. Furthermore, it concluded that Jones had not established prejudice from any allegedly deficient performance, as the evidence in the record did not show that Jones would have had standing to challenge the search.

Jones requested a certificate of appealability, which we granted on the limited issue of whether Needleman provided ineffective assistance of counsel in failing to move to suppress the evidence from Apartment H. We have jurisdiction over Jones' appeal pursuant to 28 U.S.C. §§ 1291 and 2253.

7

III.

The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel includes "the right to the effective assistance of counsel." Poindexter, 492 F.3d at 267 (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). Jones' ineffective assistance claim is governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), which requires Jones to prove "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Id. at 687.

A.

Jones asserts that Needleman provided constitutionally deficient assistance by failing to challenge the Apartment H search. Specifically, he argues that Needleman either misunderstood or ignored Simmons v. United States, 390 U.S. 377 (1968), in failing to move to suppress. In Simmons, the Supreme Court held "that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." Id. at 394. In effect, Jones contends that a reasonably competent criminal defense attorney would know that a defendant is not forced to

8

choose between forfeiting a potential Fourth Amendment objection and forfeiting a later defense at trial.  See Simmons, 390 U.S. at 392–93.

To determine if Needleman did in fact base his Apartment H suppression decision on a Simmons-related mistake, we must evaluate Needleman's "perspective at the time."  Griffin v. Warden, Md. Corr. Adjustment Ctr., 970 F.2d 1355, 1359 (4th Cir. 1992) (quoting Strickland, 466 U.S. at 689).  And while we cannot "rely on hindsight to reconstruct the circumstances of counsel's conduct," Winston v. Pearson, 683 F.3d 489, 504 (4th Cir. 2012), we must indulge a "strong presumption" that Needleman's conduct was reasonable, United States v. Galloway, 749 F.3d 238, 241 (4th Cir. 2014) (quoting Strickland, 466 U.S. at 689).  Unfortunately, the Government did not submit an affidavit from Needleman and Jones' short affidavit is the only account now in the record of Needleman's contemporaneous perspective on his trial strategy.

The parties' arguments thus center upon how to interpret Jones' affidavit.  Jones represented in the affidavit that Needleman said "if [Jones] took the stand at suppression, any admission of or ties to BREEZY TREE Court would be used at Trial to prove [his] guilt."  (J.A. 269.)  Jones contends that this statement conflicts with the rule recognized in Simmons.

9

The Government counters that the affidavit demonstrates Needleman's strategic decisionmaking in that he was appropriately concerned that the Government could use derivative evidence from a suppression hearing to Jones' detriment at trial. Specifically, the Government posits that Jones' argument asserting his standing as to Apartment H would have likely required Worthington's testimony to have a realistic chance at success, particularly since Jones had no key, was not a signatory to the lease, and codefendant Wright had testified as to his (Wright's) entitlement via Worthington to the apartment. However, the Government had been unable to locate her.

Because Jones' affidavit can be read to support Jones' and the Government's positions, it is ambiguous. On the one hand, the affidavit creates a colorable claim that Needleman believed that the Government could use Jones' suppression hearing testimony as direct evidence against him at trial to prove his guilt. If the affidavit's representation of Needleman's concern is factually accurate, then, in light of the recognized rule in Simmons, Needleman may well have performed deficiently by failing to challenge the seized evidence. See, e.g., Owens v. United States, 387 F.3d 607, 608-09 (7th Cir. 2004) (describing that counsel could be considered ineffective by making decisions based on an unfamiliarity with Simmons). On the other hand, the affidavit also states that Needleman "assured [Jones] that there

10

was no consequential evidence linking [him] to the crime of conspiracy so [Needleman was not going to complicate the matter by introducing any evidence that would tie [Jones] to BREEZY TREE Court." This statement, as the Government posits, suggests defense counsel's strategic decision. In particular, Simmons might not have prevented the Government from presenting Worthington's suppression testimony or other derivative evidence at trial if the suppression motion failed. See United States v. Boruff, 870 F.2d 316, 320 (5th Cir. 1989) ("The Fifth Amendment . . . does not protect the testimony of individuals who are not incriminating themselves and who have only supported another individual's invocation of his Fourth Amendment rights."). Jones' affidavit thus does not conclusively establish Jones' claim of ineffective assistance nor does it definitively support the Government's claim that counsel's conduct was clearly a strategic decision.

At bottom, the difference here between constitutionally deficient performance and sound trial strategy turns on what Needleman meant when he allegedly said that the Government could use Jones' "admission of or ties to" Apartment H. We do not believe the district court could make an informed judgment as to what Needleman meant on this limited record. At the outset, the question involves something of a credibility determination: the district court must decide whether it believes Jones' accounts

11

of his conversations with Needleman in the face of any other evidence. The court must also determine what Needleman's statements truly meant. Credibility determinations normally call for an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 530 (4th Cir. 1970).

But Jones' credibility is not the only point indicating the prudence of an evidentiary hearing. Noticeably absent from the record is an affidavit or testimony from Needleman describing his decisionmaking process, his trial strategy, and the substance of his discussions with Jones. It would be imprudent to find counsel constitutionally ineffective without affording him an opportunity to explain his actions. See United States v. Mandello, 426 F.2d 1021, 1023 (4th Cir. 1970) (per curiam) ("It would be grossly unfair to the trial counsel to fault his representation without having in the record some statement from him. Courts must be equally vigilant to protect counsel from the unfair imputation of professional neglect as to assure to the defendant effective representation."). In short, it is simply not known how "counsel would respond to a charge of ineffective assistance." Sneed v. Smith, 670 F.2d 1348, 1355 (4th Cir. 1982). "[U]ntil it is[,] we think the colorable claim made here . . . cannot properly be resolved." Id.

Title 28 U.S.C. § 2255(b) requires a "prompt hearing" on a petitioner's § 2255 petition unless "the motion and the files

12

and records of the case conclusively show that the prisoner is entitled to no relief." We conclude that the present record does not "conclusively" foreclose Jones' claim of deficient performance. See United States v. Witherspoon, 231 F.3d 923, 927 (4th Cir. 2000) (holding that the record did not "conclusively" foreclose § 2255 relief where it was "not clear" that "counsel dispute[d] the facts alleged" by the petitioner).

B.

Even though we conclude that the district court prematurely decided Strickland's performance prong, remand is not automatic. Jones must also carry his burden of establishing that Needleman's alleged deficient representation prejudiced him. Consequently, remand would be unnecessary if we agreed with the district court that Jones failed to make such a showing.

When counsel's deficiency is based on the litigation of a Fourth Amendment claim, the § 2255 movant must prove prejudice by showing "that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

To succeed in his Fourth Amendment challenge, Jones would first need to establish that he has standing to challenge the search of Apartment H. In other words, Jones must show that he had "a legitimate expectation of privacy" in the apartment.

13

United States v. Gray, 491 F.3d 138, 144 (4th Cir. 2007) (quoting Minnesota v. Carter, 525 U.S. 83, 89 (1998)). An expectation of privacy is legitimate if it is objectively reasonable in light of the totality of the circumstances. See United States v. Castellanos, 716 F.3d 828, 846 (4th Cir. 2013). Relevant factors in this analysis include "whether the person claims an ownership or possessory interest in the property, the individual's control of the area searched, his efforts to ensure his privacy in the object or area, the purposes for which the individual uses the property, his historical use of the property, and society's common understanding as to areas that deserve Fourth Amendment protection." Id. (internal citations, quotation marks, and alterations omitted).

The district court held that Jones did not have a reasonable expectation of privacy in the apartment because the court "likely . . . would have concluded that Jones was merely 'running a drug ring' out of the apartment of a third party." Jones, 2012 WL 5832461, at *2.

Here again, we conclude that an evidentiary hearing is necessary to resolve the credibility disputes inherent in the conflicting versions of Jones' status vis-à-vis the apartment. The testimony of Jones' codefendant, Wright, and Jones' and Worthington's affidavits present contradictory accounts of Jones' relationship to Apartment H -- and, consequently, his

14

standing to claim a privacy interest. We routinely remand for further proceedings when conflicting testimony like this appears in the record.[2] See, e.g., United States v. Diaz, 547 F. App'x 303, 304 (4th Cir. 2013) (per curiam); United States v. Wright, 538 F. App'x 237, 237 (4th Cir. 2013) (per curiam); accord United States v. Rivas-Lopez, 678 F.3d 353, 359 (5th Cir. 2012). The reason is obvious: the district court is best able to assess the credibility of conflicting accounts through an evidentiary hearing. See generally Walters v. Harris, 460 F.2d 988 (4th Cir. 1972) (reversing the district court's denial of a § 2255 movant's ineffective assistance claim and remanding for an

_____

[2] As the matter may arise on remand, we address one evidentiary dispute that the parties reference on appeal. Without citation to authority, Jones argues it would violate his right to due process to consider facts produced at codefendant Wright's suppression hearing. We disagree.

The Wright suppression hearing testimony could be properly considered at Jones' § 2255 evidentiary hearing so long as Jones is afforded a fair opportunity to challenge the veracity and accuracy of that testimony. See Smith v. United States, 206 F.3d 812, 813 (8th Cir. 2000) (per curiam) (finding no due process concern in use at sentencing of testimony from a codefendant's trial even though the defendant "was not present, represented, or able to confront and cross-examine witnesses at his codefendant's trial"). As in a sentencing hearing, the rules of evidence do not apply with equal force in § 2255 proceedings. See 1 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice & Procedure § 19.5 (6th ed. 2011) ("[H]earsay, best evidence, authentication, and other evidentiary rules are [chiefly] abandoned."). While Wright's testimony bears indicia of reliability as a sworn statement given in open court, Jones would have the right to call Wright in the § 2255 hearing as his witness or cross-examine him should the Government present him as their witness.

15

evidentiary hearing to assess the credibility of witnesses who previously only testified through conflicting affidavits), overruled on other grounds by United States v. Whitley, 759 F.2d 327 (4th Cir. 1985) (en banc); cf. United States v. Nicholson, 475 F.3d 241, 252 (4th Cir. 2007) (reversing a district court's denial of § 2255 movant's ineffective assistance claim and remanding because the inquiry was "heavily fact dependent" and "there are material factual issues yet to be addressed and determined in this case").

As with our analysis of the performance prong, the bare bones record does not permit us to properly perform our appellate review function and augurs for an evidentiary hearing so that the district court can make an informed determination upon a properly developed record.

## C.

We have always declined to create a rigid rule that would override a district court's "common sense and sound discretion" when determining whether an evidentiary hearing must be held for a § 2255 motion. Raines, 423 F.2d at 530. However, where the circumstances point to an evidentiary hearing to fairly resolve the issues presented and provide an adequate record for appellate review, we have required such a hearing. The scant record before the district court simply does not "conclusively" show that Jones is entitled to no relief. See 28 U.S.C.

16

§ 2255(b).  Neither does it clearly establish that Jones is entitled to the relief he seeks.  For these reasons, the district court should hold an evidentiary hearing in order to develop an adequate record upon which a fully informed adjudication of Jones' motion can be conducted and a proper appellate review of any judgment may be performed.

IV.

For the reasons stated, the order of the district court is hereby

VACATED IN PART AND REMANDED WITH INSTRUCTIONS.

17