Joseph R. REID, Jr., Petitioner,

v.

WARDEN, CENTRAL PRISON, RALEIGH, NORTH CAROLINA, Respondent.*

No. C–C–88–116–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Jan. 11, 1989.

---

\* Editor's Note: This opinion was originally published at 702 F.Supp. 1240. It is published here with the Magistrate's Memorandum and Recommendation.

Joseph R. Reid, Jr., Troy, N.C., pro se.

Barry S. McNeill, Asst. Atty. Gen., Raleigh, N.C., for respondent.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court upon a Memorandum and Recommendation (M & R), filed November 16, 1988, by Magistrate Paul B. Taylor. In the M & R, Magistrate Taylor recommended that, first, the Court grant Petitioner's motion to withdraw all unexhausted claims and proceed only on the exhausted claims and, second, the Court grant Petitioner's request for a Writ of Habeas Corpus and order Petitioner's immediate release.

The Court will adopt and affirm the Magistrate's findings and recommendation that relate to the withdrawal of unexhausted claims. The Court, further, will adopt and affirm the Magistrate's findings and recommendation that the Attorney General's Motion to Dismiss relating to challenges of the sufficiency of the evidence for the uttering conviction be granted. For the reasons set forth below, the Court also will order that the Attorney General's Motion to Dismiss relating to Petitioner's conviction for forgery be denied and that Petitioner's Petition for a writ of habeas corpus be granted. The Court will order, further, that the State of North Carolina immediately release Petitioner from the custody resulting from the forgery conviction.

## I. BACKGROUND

Petitioner was convicted of forgery and uttering a forged check and was sentenced to consecutive terms of imprisonment of five years and two years, respectively. The North Carolina Court of Appeals affirmed these convictions and the North Carolina Supreme Court denied discretionary review. *See State v. Reid,* 320 N.C. 796, 361 S.E.2d 85 (1987) (denying discretionary review); *State v. Reid,* 86 N.C.App. 377, 358 S.E.2d 140 (1987) (affirming convictions) (unpublished).

In his M & R, the Magistrate very thoroughly, yet concisely, presented the pertinent facts in evidence that gave rise to Petitioner's convictions for forgery and uttering a forged check. The Court will adopt the Magistrate's presentation of the facts and will refer to the facts contained in the M & R. Briefly, however, the State's evidence demonstrated that the following events transpired. On December 3, 1985, Petitioner and his girlfriend proceeded to a Sherwin Williams paint store, where Petitioner purchased with a forged check several gallons of paint. After making the purchase at one paint store, Petitioner and his girlfriend attempted three times to return the paint for a cash refund to paint stores other than the paint store from which Petitioner had purchased the paint.

Petitioner's evidence demonstrated that the following events took place. Petitioner received from his girlfriend an unsigned check. On the way to the paint store, Petitioner and his girlfriend stopped at residences belonging to friends of Petitioner's girlfriend. Petitioner testified that he did not know who signed the check. Petitioner's girlfriend testified that she neither saw Petitioner sign the check nor believed that the forged signature was the handwriting of Petitioner. Petitioner also testified that "we stopped at a few of her friends [sic] houses, and when she came out the check

was made out." Trial Transcript p. 99 (hereinafter "Trial Tr.").

In charging the jury, the trial judge gave the following instruction, among others:

> I charge that for you to find the defendant guilty of forgery, the State must prove three things beyond a reasonable doubt:
>
> FIRST, that the defendant falsely made a check by filling in the date, payee, amount, and signed the check on the account of Mr. & Mrs. Griffin with First Union Bank.
>
> *When one is found in the possession of a forged instrument and is endeavoring to obtain money or advances upon it, this raises a presumption that the defendant either forged or consented to the forging of such instrument.*
>
> SECOND, that at the time the defendant falsely made the check he intended to defraud.
>
> AND THIRD, that the check appeared to be genuine.[1]

Trial Tr. 125–26 (emphasis added).

## II. PETITIONER'S CLAIM FOR HABEAS RELIEF

On March 16, 1988, Reid petitioned for a writ of habeas corpus. Petitioner asserted several claims contending essentially that the evidence produced at trial was insufficient to convict Petitioner. Petitioner also contended that by instructing the jury that proof that Petitioner possessed a forged instrument and attempted to obtain money or an advance on it raises a presumption that Petitioner either forged the instrument or consented to the forgery of the instrument, the trial judge violated Peti-

tioner's due process rights because the instruction created a mandatory presumption and improperly shifted the burden of proof to Petitioner.

On May 19, 1988, in response to Petitioner's claims for relief, the Attorney General of North Carolina filed an Answer to Petition and Motion to Dismiss. The Attorney General conceded that Petitioner correctly had exhausted his state court remedies. Regarding Petitioner's claim about the allegedly erroneous jury instruction, the Attorney General contended, first, that by failing to object at trial to the instruction alleged to be erroneous, Petitioner procedurally had defaulted. The Attorney General argued that unless Petitioner could show both cause for and prejudice from the procedural default, the procedural default barred Petitioner's habeas claim. The Attorney General argued that Petitioner could show neither cause for nor prejudice from the procedural default and that the Court's failure to consider Petitioner's defaulted claim would not constitute a miscarriage of justice. The Attorney General contended, second, that even if the Court determined that the trial court erred in charging the jury with the instruction in issue, the error was harmless. The Attorney General argued that ample circumstantial evidence existed from which the jury, without relying on the presumption, permissibly could infer that Petitioner either forged or participated in the forgery of the check.

Regarding the sufficiency of the evidence to sustain Petitioner's conviction for forgery, the Attorney General contended

---

**1.** The Court notes that North Carolina courts long have approved of the following presumption often contained in jury instructions:

> Where one is found in the possession of a forged instrument and is endeavoring to obtain money or advances upon it, this raises a presumption that defendant either forged or consented to the forging of such instrument, and nothing else appearing the person would be presumed to be guilty.

*State v. Jestes,* 185 N.C. 735, 736, 117 S.E. 385, 385 (1923) (contained in jury instruction alleged to be in error, but approved by court); *State v. Peterson,* 129 N.C. 556, 557–558, 40 S.E. 9, 11 (1901) (found in allegedly erroneous jury in-

struction, which court upheld); *State v. Morgan,* 19 N.C. 348, 352 (1837) (recognizing and explaining reasons supporting presumption); *State v. Fleming,* 52 N.C.App. 563, 568, 279 S.E. 2d 29, 32 (1981) (recognizing long-standing presumption concerning forgery).

The Court recognizes that the trial judge's instruction at Petitioner's trial was missing the language "and nothing else appearing." The Court concludes that the failure to include this language is an important distinction between the two instructions. The Court, consequently, will review only the instruction given at Petitioner's trial.

that because of ample circumstantial evidence from which the jury, without relying on the presumption, permissibly could infer that Petitioner either forged or participated in the forgery of the check, Petitioner's claim was without merit.

On May 5, 1988, and May 13, 1988, Petitioner filed motions with the Court, which the Magistrate construed as adding new claims of relief.

On July 21, 1988, the Attorney General filed a Supplemental Answer to Petition and Motion to Dismiss, in which the Attorney General responded to Petitioner's additional claims for relief. The Attorney General contended that because Petitioner failed to exhaust state court remedies for the new claims for relief, the Court should dismiss Petitioner's cause of action for mixing exhausted and non-exhausted claims for relief.

On August 12, 1988, Petitioner moved the Court to allow the withdrawal of the non-exhausted claims for relief.

### III. THE MAGISTRATE'S M & R

In response to the Attorney General's Motion to Dismiss and Petitioner's Motion, the Magistrate filed the M & R now before this Court recommending that, first, the Court grant Petitioner's motion to withdraw all unexhausted claims and proceed only on the exhausted claims and, second, the Court grant Petitioner's request for a Writ of Habeas Corpus and order Petitioner's immediate release.

On November 25, 1988, the Attorney General timely filed Objections to Magistrate's M & R. The Attorney General specifically objected to the following six Magistrate's conclusions:

1. That there was no evidence that Petitioner himself created the forged check, or that he was in sole possession of the check from the time that it was stolen until the time that it was uttered;

2. That the uncontradicted evidence presented by Petitioner and Joyce Smith indicated that the check was forged after Ms. Smith took possession of the unsigned check and went into a friend's house while Petitioner waited outside;

3. That the State failed to meet its burden of proving every element of the forgery beyond a reasonable doubt since there was no evidence tending to show that Petitioner falsely made the check;

4. That the presumption of forgery does not comport with due process of law and cannot be used to support Petitioner's forgery conviction;

5. That the use of the presumption constituted error and unconstitutionally shifted the burden of proof to Petitioner in violation of his rights to due process, and, consequently, that his conviction on the forgery count must be reversed; and

6. That federal habeas review of Petitioner's claim is not barred by his state procedural default since the State failed to prove that Petitioner was guilty of the crime of forgery and the unconstitutional use of the presumption resulted in the conviction of one who is "actually innocent."

Section 636(b)(1)(C) of Title 28 of the United States Code provides that when objections are filed to a Magistrate's proposed findings or recommendations, the district court must conduct a *de novo* review of the specific findings or recommendations to which the objections are made. Further, section 626(b)(1)(C) authorizes district courts to "accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate."

This Court has conducted a *de novo* review of those portions of the Magistrate's M & R to which the Attorney General has objected. The Court carefully and thoroughly has reviewed the applicable law, the entire case file, and the M & R.

#### A. Exhaustion

The Attorney General did not object to the Magistrate's recommendation that the Court grant Petitioner's Motion to withdraw the unexhausted claims. The Court will accept and adopt the Magistrate's recommendation to grant Petitioner's Motion to withdraw the unexhausted claims. The Court, consequently, will allow Petitioner to proceed only on the exhausted claims in

accordance with *Rose v. Lundy.* *See Rose v. Lundy,* 455 U.S. 509, 520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982) (allowing habeas petitioners to proceed only on exhausted claims, but recognizing habeas petitioners' right to amend habeas petition to delete unexhausted claims).

## B. The Uttering Conviction

Neither Petitioner nor the Attorney General objected to the Magistrate's findings that claims involving the insufficiency of the evidence relating to Petitioner's conviction for uttering are meritless and the Magistrate's recommendation that the Court grant the Attorney General's Motion to Dismiss as it relates to challenges of the sufficiency of the evidence for the uttering conviction. The Court will accept and adopt the Magistrate's findings and recommendation to grant the Attorney General's Motion to Dismiss as it relates to challenges of the sufficiency of the evidence for the uttering conviction.

## C. The Forgery Conviction

### 1. Background

Each of the Attorney General's Objections to the Magistrate's M & R involves the Magistrate's findings and recommendations regarding Petitioner's conviction for forgery. The essential element of forgery under North Carolina law that is at issue is the false making or alteration of some written instrument. *See State v. McAllister,* 287 N.C. 178, 188, 214 S.E.2d 75, 83 (1975) (listing false making or alteration of some written instrument as one of three elements of forgery). The Court, therefore, will examine in detail Petitioner's claims challenging the trial judge's instruction containing the alleged unconstitutional presumption and the sufficiency of the evidence to sustain Petitioner's forgery conviction.

### 2. Procedural Default

There can be no argument that by failing contemporaneously to object to the trial judge's instruction, Petitioner procedurally defaulted. When Petitioner unsuccessfully appealed the trial judge's instruction, the North Carolina Court of Appeals stated that "defendant is now barred by Rule 10(b)(2) of the Rules of Appellate Procedure from challenging the instruction on appeal unless the alleged error amounts to 'plain error.'" *State v. Reid,* No. 8726SC22, slip op. at 4 (N.C.App. (1987)) [86 N.C.App. 377, 358 S.E.2d 140 (table)]. The Court of Appeals, therefore, relied upon the procedural default to bar Petitioner's appeal. The Court of Appeals subsequently reviewed, however, the trial judge's instruction to determine whether the instruction constituted plain error and concluded that the instruction did not constitute plain error. *Id.* at 4–6.

When a state appellate court considers the merits of an alleged trial error despite the existence of a procedural default, the state court's consideration of the merits ordinarily signifies a waiver of the procedural default and removes the impediment to substantive treatment by the federal habeas court. *County Court v. Allen,* 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979); *Rosenfeld v. Dunham,* 820 F.2d 52, 54–55 (2d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 463, 98 L.Ed.2d 402 (1987); *Baker v. Muncy,* 619 F.2d 327, 329 (4th Cir.1980). The majority of the federal circuit courts of appeals have held that a plain error review on appeal does not constitute a ruling on the merits of a defaulted claim. *See Julius v. Johnson,* 840 F.2d 1533, 1546 (11th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 404, 102 L.Ed.2d 392 (1988); *Puleio v. Vose,* 830 F.2d 1197, 1200 (1st Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1297, 99 L.Ed.2d 506 (1988). The North Carolina Court of Appeals' plain error review, therefore, does not constitute a decision on the merits, which effectively would nullify Petitioner's procedural default. Moreover, the United States Court of Appeals for the Fourth Circuit has held that the *Wainwright* bar of federal habeas review applies when a state court has found a procedural default regardless of whether the state court alternatively has discussed the merits. *Davis v. Allsbrooks,* 778 F.2d 168, 175 (4th Cir.1985); *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977) (barring federal habeas claim because of procedural

default absent showing of cause and prejudice).

The United States Supreme Court has held that when a federal habeas petitioner procedurally defaults at trial, the procedural default ordinarily will bar federal habeas review absent a showing of cause and prejudice. *Wainwright*, 433 U.S. at 87, 97 S.Ct. at 2506; *see Davis*, 778 F.2d at 175 (Fourth Circuit recognizing cause and prejudice standard enunciated in *Wainwright*). After reviewing the Petition and the Attorney General's answer, the Court concludes that Petitioner has made no showing of cause for the procedural default at trial. The Court, therefore, will not consider whether Petitioner has made the proper showing of prejudice. *See Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986) (recognizing conjunctive nature of cause and prejudice standard).

■ The Supreme Court has held, however, that although a procedural default has occurred, federal habeas review is available when, if the habeas review were not undertaken, a constitutional violation would result in the miscarriage of justice. *Wainwright*, 433 U.S. at 91, 97 S.Ct. at 2508. If such a miscarriage of justice would result from a constitutional violation, the principles of comity and finality would yield to the necessity of correcting a fundamentally unjust incarceration. *Engle v. Isaac*, 456 U.S. 107, 135, 102 S.Ct. 1558, 1575–76, 71 L.Ed.2d 783 (1982). The Supreme Court has held, further, that federal habeas review is available when a constitutional violation probably has resulted in the conviction of one who is actually innocent. *Carrier*, 477 U.S. at 495–96, 106 S.Ct. at 2649–50. Consequently, despite Petitioner's procedural default, this Court may review Petitioner's habeas claim if a constitutional violation probably has resulted in the conviction of one who is actually innocent.

*a. The Existence of a Constitutional Violation*

■ In the M & R, the Magistrate concluded that by failing to prove that Petitioner actually had forged the check, but instead unconstitutionally had used a burden-shifting presumption, the State failed to prove beyond a reasonable doubt every element of the crime of forgery and, consequently, unconstitutionally violated Petitioner's due process rights. After carefully reviewing the trial judge's instructions, the parties' briefs, and the applicable law, the Court concludes that the State's use of and reliance upon the burden-shifting presumption to prove that Petitioner forged a check unconstitutionally violated Petitioner's due process rights.

At trial, the State did not introduce any direct evidence that Petitioner forged the check. The State, instead, relied upon circumstantial evidence to prove that Petitioner forged the check. The Attorney General relied, further, upon a jury instruction containing the presumption that because Petitioner was in possession of a forged instrument and was endeavoring to obtain money or advances for the forged instrument, Petitioner was guilty of the forgery. The Court, therefore, will consider whether the use of this instruction was a constitutional violation in that the presumption allowed the State unconstitutionally to convict Petitioner without proving beyond a reasonable doubt every element of the crime of forgery.

The United States Court of Appeals for the Fourth Circuit has held that in considering the constitutionality of a challenged jury instruction, the reviewing court must consider the single jury instruction in the context of the overall charge to the jury. *Gore v. Leeke*, 605 F.2d 741, 743 (4th Cir. 1979), *cert. denied*, 444 U.S. 1087, 100 S.Ct. 1048, 62 L.Ed.2d 774 (1980). The Fourth Circuit has stated also that to receive relief, a habeas petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *Cooper v. North Carolina*, 702 F.2d 481, 483–84 (4th Cir. 1983).

The Supreme Court in *County Court v. Allen* recognized that inferences and presumptions are often necessary for factfinders to determine the existence of an element of the crime, termed an elemental

fact, from the existence of one or more evidentiary facts. *County Court v. Allen,* 442 U.S. 140, 156, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979). The Supreme Court in *County Court* stated that the ultimate test of a presumption's constitutionality is whether the presumption undermines the factfinder's responsibility at trial to find based upon the evidence introduced by the State the elemental facts beyond a reasonable doubt. *Id.* This Court, therefore, must determine whether in a case in which the act of forging an instrument is an element of the offense charged, the jury instruction given by the trial judge unconstitutionally violated Petitioner's right to have the State prove beyond a reasonable doubt every element of the crime of forgery.

To enable the Court to determine what a reasonable juror could have interpreted the trial judge's instruction to mean, the Court must consider the actual language of the instruction to determine the nature of the presumption. *Sandstrom v. Montana,* 442 U.S. 510, 514, 99 S.Ct. 2450, 2454, 61 L.Ed.2d 39 (1979) (noting that threshold inquiry in constitutional analysis is to determine nature of presumption contained in instruction). At Petitioner's trial, the trial judge charged the jury in pertinent part as follows:

> When one is found in the possession of a forged instrument and is endeavoring to obtain money or advances upon it, this raises a presumption that the defendant either forged or consented to the forging of such instrument.

Trial Tr. p. 125. The Court believes that the jury could have interpreted the trial judge's instruction as stated in either of the three following ways: First, as an entirely permissive presumption, which essentially allows, but does not require, the jury to infer the elemental fact of forgery from proof by the State of the two facts triggering the presumption, possession and an attempt to obtain money or advances; second, as a mandatory presumption, which essentially is a direction by the trial court that once the jury is convinced of the two facts triggering the presumption, the jury must find that Petitioner forged the check

unless Petitioner offered some quantum of evidence to rebut the presumption; or, third, as a conclusive presumption, which essentially is an irrebuttable direction by the trial court that once the jury is convinced of the two facts triggering the presumption, the jury must find that Petitioner forged the check. *See Sandstrom,* 442 U.S. at 515–17, 99 S.Ct. at 2454–55 (in considering similar presumption involving intent, Supreme Court reached similar conclusion about presumption contained in jury instructions).

It is impossible for the Court precisely to determine which interpretation the jury actually gave to the trial judge's instruction. The Court believes, however, that the trial judge's instruction reasonably may have confused the jury and, consequently, actually may have impacted the jury's verdict.

The Court, consequently, must consider whether as applied to Petitioner, the presumption contained in the trial judge's instruction, and accordingly the three reasonable interpretations of the trial judge's instruction, is constitutionally permissible. When the trial judge instructs the jury with an entirely permissive presumption, the factfinder is completely free to accept or reject the presumption and the presumption does not shift the burden of proof. *County Court,* 442 U.S. at 157, 99 S.Ct. at 2224. In *County Court,* the Supreme Court recognized that the entirely permissive presumption ordinarily is constitutional and affects the reasonable doubt standard only if as applied to the facts, the factfinder rationally could not make the connection permitted by the presumption. *Id.*

In *County Court,* the Supreme Court recognized essentially two types of mandatory presumptions: Those presumptions that shift the burden of production and those presumptions that shift the burden of persuasion. *Id.* at 157 n. 16, 99 S.Ct. at 2225 n. 16. When a shift in the burden of production occurs, the defendant simply must produce at trial some evidence that rebuts the presumption. *Davis,* 778 F.2d at 173. The Fourth Circuit has held that provided the presumed fact is rationally

connected to the proven fact, a state constitutionally may shift a burden of production on an element of the crime to a defendant. *Id.* (citing standards established by Supreme Court in *County Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979)). A shift in the burden of persuasion, however, imposes on the defendant the heavier burden to produce at trial evidence sufficient to affirmatively establish the fact sought to be proved. *Mullaney v. Wilbur,* 421 U.S. 684, 703 n. 31, 95 S.Ct. 1881, 1891 n. 31, 44 L.Ed.2d 508 (1975). In *Sandstrom,* the Supreme Court held that because mandatory presumptions which shift the burden of persuasion to a criminal defendant relieve the State of proving beyond a reasonable doubt each element of the offense charged, mandatory presumptions shifting the burden of persuasion on an element of the offense are unconstitutional. *Sandstrom,* 442 U.S. at 523, 99 S.Ct. at 2458–59; *see County Court,* 442 U.S. at 157–59, 99 S.Ct. at 2224–26 (explaining reasons that mandatory presumption is "troublesome evidentiary device"); *Mullaney,* 421 U.S. at 704, 95 S.Ct. at 1892 (finding presumption that shifted burden of persuasion to be constitutionally deficient).

In *Sandstrom,* the Supreme Court considered a presumption contained in jury instructions that a jury reasonably could have interpreted as a conclusive presumption. *Sandstrom,* 442 U.S. at 521–23, 99 S.Ct. at 2458–59. The Supreme Court recognized that conclusive presumptions involving elements of the offense charged conflict with the presumption of innocence and invade the factfinding function of the jury. *Id.* at 523, 99 S.Ct. at 2458–59. The *Sandstrom* Court recognized that the jury reasonably could have concluded the trial judge's instruction to be a direction that upon proof of the evidentiary facts, the jury must find the existence of the elemental facts. *Id.* The Supreme Court concluded, therefore, that because the State did not bear the burden of proving beyond a

reasonable doubt every element of the offense, the instruction that the jury reasonably could have interpreted to contain a conclusive presumption violated the defendant's constitutional rights. *Id.*

After considering the language of this specific instruction and the rest of the trial judge's charge to the jury, the Court believes that the trial judge's instruction in Petitioner's trial was similar to the instruction in *Sandstrom.* The Court believes that the jury reasonably could have interpreted the presumption to be either a conclusive presumption or a mandatory presumption that shifted the burden of persuasion. The Court is of the opinion that the jury's confusion over the nature of the presumption and the weight of the burden placed on Petitioner by the presumption directly may have affected whether the State met its burden of proving beyond a reasonable doubt that Petitioner forged the check.

In reviewing the entire charge to the jury, the Court does not believe that the trial judge sufficiently explained to the jury the nature or the meaning of the presumption contained in the instruction.[2] The trial judge did not inform the jury that it could choose to accept or reject the presumption, as with an entirely permissive presumption. The Court believes, however, that a reasonable jury would not have interpreted the instruction to include an entirely permissive presumption. The trial judge did not inform the jury that Petitioner could offer evidence to rebut the presumption. The trial judge offered no qualifying instructions to assist the jury in its interpretation of the presumption. The instructions given by the trial judge, consequently, did not clearly and plainly direct the jury to consider all the evidence introduced and circumstances relating to the forgery to support the inference called for by the presumption. The Court believes that a reasonable jury would have interpreted the presumption to be either a con-

---

**2.** The Court recognizes that the trial judge instructed the jury that Petitioner was presumed to be innocent (Trial Tr. at 122), that the State had the burden of proof beyond a reasonable doubt (Trial Tr. at 122, 125), and that the jurors were the finders of fact (Trial Tr. at 127). The Court does not believe, however, that these instructions sufficiently clarified the nature of the presumption.

clusive presumption or, at the very least, a mandatory presumption that shifted the burden of persuasion. The Court concludes, consequently, that the trial judge's charge could have misled the jury and that due to the possibility for the jury's confusion, the erroneous instruction by itself so infected the entire trial that Petitioner's conviction on the forgery charge violates Petitioner's due process rights.

### b. Petitioner's Actual Innocence

■ In the Attorney General's Objections, the Attorney General contends that the evidence at trial established that Petitioner forged the check and that "there is no affirmative evidence Petitioner was actually innocent of the forgery of the check." *Reid v. Warden*, C–C–88–116–P, Objection to Magistrate's Memorandum and Recommendation, at 4 (W.D.N.C., filed November 25, 1988). The State did not introduce any direct evidence at trial the Petitioner forged the check. Instead, the State relied upon circumstantial evidence to prove that Petitioner forged the check. The Attorney General relies, further, upon the North Carolina Court of Appeals' characterization of the evidence as ample circumstantial evidence from which the jury permissibly could infer that Petitioner forged the check, or participated with Petitioner's girlfriend in its forgery. *State v. Reid*, No. 8726SC22, slip op. at 4.

The direct evidence at trial relating to the act of forgery was Petitioner's testimony that Petitioner did not forge the check, but when his girlfriend came from the residence of a friend, the check "was made out." Trial Tr. p. 99. Petitioner testified further that because his girlfriend previously had written checks on her mother's account, Petitioner believed that his girlfriend was authorized to write checks on the bank account. Trial Tr. p. 99. Petitioner's girlfriend testified that she neither saw Petitioner sign the check nor believed that the forged signature was the handwriting of Petitioner. The Court recognizes that circumstantial evidence relating to the forgery may have existed. The Court believes, however, that without the use of the presumption, the evidence is insufficient to show that Petitioner actually forged the check. The Court must conclude that because the State did not introduce sufficient evidence to show that Petitioner actually had committed the forgery, Petitioner was innocent.

By contending that "there is no affirmative evidence Petitioner was actually innocent of the forgery of the check," the Attorney General attempts to argue that the actually innocent exception recognized by the Supreme Court in *Murray* does not apply. This contention, however, ignores the evidence introduced at trial by Petitioner. Because of the constitutionally deficient instruction, the Court cannot state with certainty that the jury chose to disbelieve the testimony of Petitioner and Petitioner's girlfriend.

### 3. Harmlessness of Constitutional Error

■ After finding a constitutional error, the Court must consider whether the error was harmless. The Supreme Court in *Chapman v. California* recognized that a reversal of a criminal conviction necessary does not result from a finding of a constitutional error. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *see Rose v. Clark*, 478 U.S. 570, 583–84, 106 S.Ct. 3101, 3109–10, 92 L.Ed.2d 460 (1986) (reaffirming standard set forth in *Chapman v. California*). The Court in *Chapman* further recognized that an error is harmless if, beyond a reasonable doubt, the error did not contribute to the jury verdict. *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828. The harmless error analysis promotes the notion that "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986).

In Petitioner's case, this Court is not convinced that the error was in fact harmless. This Court already has explained the reasonable confusion that could have resulted from the trial judge's instruction. The Court already has reviewed and recounted the evidence at trial relating to the forgery. The evidence introduced at trial was not so dispositive of the issue that

Petitioner actually forged the check that the Court can conclude beyond a reasonable doubt that the jury would have found it unnecessary to rely on the presumption. The Court concludes, consequently, that the constitutional error was not harmless.

4. Sufficiency of the Evidence to Support Petitioner's Forgery Conviction

■ After concluding that the trial judge's instruction unconstitutionally violated Petitioner's due process rights, the Court ordinarily would consider whether absent the erroneous instruction, sufficient evidence existed to support the conviction. The Supreme Court has held, however, that when a court analyzes a mandatory presumption, it is irrelevant whether ample evidence exists in the record other than the presumption to support the conviction. *County Court,* 442 U.S. at 159–60, 99 S.Ct. at 2226. Consequently, the Court will not consider the sufficiency of the evidence to support Petitioner's conviction on the forgery charge.

### IV. CONCLUSIONS

IT IS ORDERED, THEREFORE, that the Petitioner's Motion to withdraw all unexhausted claims and proceed only on the exhausted claims be, and hereby is, *GRANTED.*

IT IS ORDERED, FURTHER, that the Attorney General's Motion to Dismiss relating to challenges of the sufficiency of the evidence for the uttering conviction be, and hereby is, *GRANTED.*

IT IS ORDERED, FURTHER, that the Attorney General's Motion to Dismiss relating to Petitioner's conviction for forgery be, and hereby is, *DENIED.*

IT IS ORDERED, FURTHER, that Petitioner's Petition for a writ of habeas corpus be, and hereby is, *GRANTED.* The State of North Carolina is commanded immediately to release Petitioner from custody resulting from the forgery conviction. If the State of North Carolina wishes to retry Petitioner, the State must do so within a reasonable time.

### MEMORANDUM AND RECOMMENDATION FOR THE GRANTING OF HABEAS CORPUS RELIEF

PAUL B. TAYLOR, United States Magistrate.

This matter is before the undersigned Magistrate on recommendation from the District Court pursuant to 28 U.S.C. § 636(b)(1)(B).

Petitioner Joseph R. Reid, Jr. was convicted of forgery and uttering a forged check during the August 11, 1986 Criminal Session of the Superior Court for Mecklenburg County, and was sentenced to consecutive terms of imprisonment of five years and two years, respectively. On direct appeal, the North Carolina Court of Appeals, in an unpublished opinion, affirmed these convictions, *State v. Reid,* 86 N.C.App. 377, 358 S.E.2d 140 (1987), and the North Carolina Supreme Court denied discretionary review. *State v. Reid,* 320 N.C. 796, 361 S.E.2d 85 (1987).

In this petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254, Petitioner alleges:

1. That the District Attorney gave Petitioner late notice of an additional charge against him of which neither Petitioner nor his counsel were aware until forty-five minutes prior to trial;

2. That the evidence produced at trial was insufficient to convict Petitioner;

3. That the trial judge erred when he:

a. allowed as an in-court identification "the man with a blue shirt" without further identification;

b. denied Petitioner's Motion to Dismiss at the close of the State's evidence;

c. denied Petitioner's Motion to Dismiss at the close of Petitioner's evidence;

d. denied Petitioner's Motion to Dismiss the forgery charge where the evidence was insufficient for a trier of fact to find beyond a reasonable doubt that every element of the offense was proved beyond a reasonable doubt;

e. instructed the jury on flight; and

f. instructed the jury that proof that Petitioner possessed a forged instrument and attempted to obtain money or an advance on it raises a presumption that Petitioner either forged the instrument or consented to the forgery of the instrument because the instruction created a mandatory presumption and improperly shifted the burden of proof to Petitioner, in violation of his due process rights.

The Attorney General of North Carolina has filed a Motion to Dismiss the petition on the grounds that the claims lack substantive merit under the law and the facts of this case. For the reasons set forth below, the undersigned Magistrate finds merit in the petition and herewith recommends that the Court grant habeas corpus relief.

## I. EXHAUSTION

The Attorney General conceded in his answer that state court remedies have been exhausted with regard to Claims 2 and 3(f), and that Claims 3(b), 3(c) and 3(d), pertaining to Petitioner's claim concerning the sufficiency of the evidence, are subsumed under Claim 2. Respondent, therefore, either concedes or waives exhaustion with respect to these claims. Consequently, the Court accepts Respondent's concession and waiver of the exhaustion requirement, and finds that the exhaustion requirements of 28 U.S.C. § 2254(b) have either been met or waived with respect to Claims 2, 3(b), 3(c), 3(d), and 3(f). *Sweezy v. Garrison*, 694 F.2d 331 (4th Cir.1982), *cert. den.*, 461 U.S. 908, 103 S.Ct. 1882, 76 L.Ed.2d 812 (1983).

In his supplemental answer, Respondent pointed out that Claims 1, 3(a) and 3(e) had not been exhausted and moved to have the entire petition dismissed under *Rose v. Lundy*, 455 U.S. 509, 520, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), because it was a mixed petition, containing both exhausted and unexhausted claims. Petitioner responded by asking the Court to waive the exhaustion requirement, if permissible, or, in the alternative, to allow Petitioner to withdraw the unexhausted claims.

It appearing that these additional claims have not been exhausted,[1] the undersigned recommends that the Court grant Petitioner's Motion to withdraw these claims so that Petitioner may proceed only on the exhausted claims in accordance with *Rose v. Lundy*.

## II. EVIDENCE PRESENTED AT TRIAL

The facts of this case are not in dispute. As summarized by the North Carolina Court of Appeals, the state's evidence established the following:

[T]hat, on 3 December 1985 at 1:32 p.m. defendant purchased with a forged check several gallons of paint from the Sherwin Williams paint store on Freedom Drive in Charlotte, North Carolina and received, in addition to the paint, $30.73 in cash. The check was drawn on the account of Ward and Eva Griffin, parents of defendant's girlfriend, Joyce Griffin Smith, and was signed "Eva H. Griffin." Both Mr. and Mrs. Griffin testified that the signature on the check was not that of Mrs. Griffin and that neither their daughter nor anyone else was authorized to write checks on the account.

.    .    .    .    .

... that, on the same day, defendant, accompanied by Ms. Smith, attempted to return the paint for a cash refund at three other Sherwin Williams stores in Charlotte. At 2:00 p.m. defendant, using the name John Belk, was refused a refund at the Central Avenue Sherwin Williams store and was told that store

---

1. The record shows that Petitioner assigned as error for appeal Claims 1 and 3(e). Petitioner, however, failed to brief or argue the issues in his appeal to the North Carolina Court of Appeals and, therefore, did not give the state courts the first opportunity to review these challenges to his state convictions. Petitioner neither assigned as error nor briefed Claim 3(a).

N.C.R.App.P. 28(b)(5) provides that "exceptions not set out in the appellant's brief, or in support of which no reason or argument is stated or authorities cited, will be taken as abandoned." This is a clearly-stated and published rule of the appellate court practice in North Carolina.

policy required that merchandise purchased by check the same day must be returned to the store where it was purchased. At 2:30 p.m. a white female returned two gallons of paint to the Albemarle Road store, for $27.15 cash, presenting a receipt from which the corner showing whether the purchase was paid by check, cash, or credit card had been torn. Later in the day defendant and Ms. Smith attempted to return the remaining merchandise to a third store at South Park, but that store had been alerted to the transaction. They left as the police arrived, leaving the paint behind in their truck in the parking lot.

Employees from three of the four stores involved identified the defendant or gave descriptions which matched his appearance. At each store, the receipt presented bore the number 11480–55974 designating the initial purchase transaction at the Freedom Drive store. *State v. Reid,* slip op. at 2–3.

Petitioner presented the following evidence:

[Petitioner] testified that he and Ms. Smith initially purchased the paint with the intention of doing some work on Ms. Smith's parents' house, but that they had an argument and abandoned the plan. He admitted the three attempts to return the paint. [He] further testified that Ms. Smith gave him the check, that when she gave it to him it was not signed, that they stopped at some of her friends' houses on the way to Freedom Drive, and that he did not know who filled out the check. Ms. Smith corroborated some of [Petitioner's] testimony, denied signing the check herself, and testified that she neither saw [Petitioner] sign it nor thought the signature looked like [his] handwriting. *State v. Reid,* slip op. at 3.

During the charge to the jury, the judge gave the following instruction:

The defendant in the first count has been accused of forgery of a check. Which is fraudulently and falsely making a check so that it appears to genuine [sic].

I charge that for you to find the defendant guilty of forgery, the State must prove three things beyond a reasonable doubt:

FIRST, that the defendant falsely made a check filling in the date, payee, amount and signed the check [sic] the account of Mr. & Mrs. Griffin with First Union Bank.

*When one is found in the possession of a forged instrument and is endeavoring to obtain money or advances upon it, this raises a presumption that the defendant either forged or consented to the forging of such instrument.*

SECOND, that at the time the defendant falsely made the check he intended to defraud.

AND THIRD, that the check appeared to be genuine.

Now, members of the jury, for a person to be guilty of a crime it is not necessary that he himself do all of the acts necessary to constitute the crime. If two or more persons act together with a common purpose to commit forgery of a check, then each of them is held responsible for the acts of the other done in the commission of forgery of a check.

So I charge that if you find from the evidence and beyond a reasonable doubt that on or about the alleged date Joseph Robert Reid, Jr., acting either by himself or together with Joyce Griffin Smith forged a check intending to defraud and the check appeared to be genuine, it would be your duty to return a verdict of guilty of forgery of a check.

However, if you do not so find or if you have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty. Tr. at 125–26. (emphasis added).

### III. DISCUSSION

#### A. The Claims on the Merits

Claims 2, 3(b), 3(c) and 3(d) all relate to the sufficiency of the evidence used to convict Petitioner on the forgery and uttering charges.

In a sufficiency of the evidence challenge, the proper standard of review in habeas cases is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). However, the reviewing court must allow the government the benefit of all reasonable inferences from facts proven to facts sought to be established. *United States v. Tresvant,* 677 F.2d 1018 (4th Cir.1982).

### 1. The Uttering Conviction

Employing this standard, there is clearly sufficient evidence to support the uttering charge. The state's evidence tended to show that Mrs. Griffin's signature was forged; that Petitioner uttered the forged check as true to the first Sherwin Williams store; that Petitioner bought paint and received cash with the forged check; that Petitioner went to another store and, using a false name, attempted to obtain a refund for the paint which had been purchased with the forged check; and that Petitioner then attempted to get a refund from the paint at a different store. This evidence, along with reasonable inferences therefrom, clearly establishes that Petitioner uttered a forged check and acted for the sake of gain with the intent to defraud, knowing that the check was forged. Accordingly, any claims relating to the sufficiency of evidence with regard to the uttering conviction are without merit and should be dismissed.

### 2. The Forgery Conviction

Petitioner was charged with and convicted of two separate offenses—forgery of a check in violation of N.C.G.S. § 14–119, and uttering a forged check in violation of N.C. G.S. § 14–120. Convictions under these statutes may be punished separately as Class I felonies[2], as the offenses constitute separate and distinct criminal acts. In the present case, Petitioner received a five year term of imprisonment on the forgery conviction, and a consecutive two-year term of imprisonment on the uttering conviction.

The central issue in this case is whether the State, having proven Petitioner guilty of uttering, may use the same evidence, together with a presumption, to find him guilty of the separate crime of forgery—even though the State offered no direct evidence that Petitioner forged the check in question and two defense witnesses clearly testified that Petitioner was *not* the one who forged the check. The apparent unfairness of this situation is that Petitioner is being twice punished for the same act simply by the application of a legal presumption.

At the outset, it must be noted that the North Carolina Court of Appeals has specifically approved and found constitutional the presumption used in this case. In *State v. Roberts,* 51 N.C.App. 221, 275 S.E. 2d 536 (1981), the Court considered the following presumption contained in the charge to the jury:

> I instruct you that it is the law that when a person is found in the possession of a forged check and he is endeavoring to obtain money or advances upon it, this raises a presumption that the defendant either forged or consented to the forging of such check, and nothing appearing, the person would be presumed to be guilty of forgery. 51 N.C.App. at 222–223, 275 S.E.2d 536.

With the exception of the added phrase "nothing appearing", this is essentially the same instruction given to the jury in Petitioner's case. Tr. at 125.

In *Roberts,* the Court justified the presumption as follows:

> In the case before us it is apparent that the instruction describes a permissive inference, and that due process was not violated because (1) there is a rational connection between the basic and elemental facts such that upon proof of the basic facts (possession of a forged check and endeavoring to obtain money from it), the elemental facts (either forged or consented to forging of such check) are more likely to exist; and (2) there is other evidence in the case which, taken

---

**2.** Imprisonment up to 5 years. N.C.G.S. 14–1.1.

together with the inference of presumption, is sufficient for a jury to find the elemental facts beyond a reasonable doubt. The elemental fact was not conclusively prejudged and the burden to disprove the existence of the elemental fact was not actually shifted to the defendant.

Before giving the questioned instruction the trial court instructed as to the State's and defendant's evidence. The presumption instruction ended with the words "and nothing appearing, the person would be presumed to be guilty of forgery." The trial court then charged that the State must prove each of the elements of the offense beyond a reasonable doubt. The State offered substantial evidence of the basic facts and additional evidence connecting defendant with the lost checks, evidence unquestionably sufficient to support the jury verdict. Finally, we do not think the challenged presumption either places an unfair burden on the defendant or otherwise results in substantive injustice. 51 N.C.App. at 223, 275 S.E.2d 536.

The analysis by the Court in *Roberts* is troublesome because it does not focus on justifying the use of the presumption itself, but relies on "other evidence" in the case.[3] This circuitous reasoning illustrates the flaw of the presumption. The other evidence is evidence of uttering the forged check, a separate offense of which Petitioner has been convicted and for which he has been punished. Under such reasoning, the presumption thus operates to hold one who is convicted of uttering to be automatically convicted of forgery as well.

Additionally troublesome is the fact that several other states have apparently approved the use of this type of presumption in uttering and forgery cases. *See e.g., State v. Jones,* 703 S.W.2d 41 (Mo.App.

1985); *Fitzgerald v. Commonwealth,* 313 S.E.2d 394 (Va.1984); *Laird v. State,* 406 So.2d 35 (Miss.1981); *Anderson v. State,* 553 S.W.2d 85 (Tenn.Cr.App.1977); *State v. Ogden,* 210 Kan. 510, 502 P.2d 654 (1972); *State v. Loucks,* 28 Ohio App.2d 77, 274 N.E.2d 773 (1971); *Bieber v. State,* 8 Md. App. 522, 261 A.2d 202 (1970); *Smazal v. State,* 31 Wis.2d 360, 142 N.W.2d 808 (1966). This Court could find only one state court which specifically condemned the use of this presumption. *See, State v. Martin,* 341 N.W.2d 728 (Iowa 1983).

Despite the approval given to this presumption by North Carolina[4] and several other states, the United States Court of Appeals for the Fourth Circuit has questioned its use. In *Sneed v. Smith,* 670 F.2d 1348 (4th Cir.1982), a habeas corpus case arising out of North Carolina, the Petitioner had been convicted of both forgery and uttering. In reversing the conviction for forgery, the Court of Appeals noted:

The State's proof of forgery against Sneed, viewed in the light most favorable to the prosecution, consisted of Birdwell's testimony that three checkbooks had been stolen from his business; Bradley's testimony that Sneed drove her to an Ingle's market in Asheville, gave her a phony driver's license and a forged check taken from one of Birdwell's checkbooks, and made her utter the check; and Officer Hensley's testimony that Sneed and six other people were present in a suite of rooms in which the stolen Birdwell checkbooks and a checkwriter were found. *While this proof constitutionally suffices to show that Sneed uttered a forged check, it does not so suffice to show, either directly or inferentially, that Sneed made the forged check and is, therefore, also guilty of forgery.* Accordingly, he is

---

**3.** The Court also noted that the instruction included the phrase "and nothing appearing". If such a qualifying phrase is important to the Court of Appeals' justification for the use of this presumption, then this phrase takes on an added significance—in Petitioner's case, the judge failed to include this phrase in his instructions on the presumption. Tr. at 125.

**4.** In addition to *Roberts,* the North Carolina Court of Appeals has specifically approved this presumption in at least three other cases. *See e.g., State v. Walston,* 67 N.C.App. 110, 312 S.E. 2d 676 (1984); *State v. DeGina,* 42 N.C.App. 156, 256 S.E.2d 275 (1979); *State v. Bauguess,* 13 N.C.App. 457, 186 S.E.2d 185 (1972).

entitled to habeas relief in respect of this conviction. 670 F.2d at 1352–53. (emphasis added).

In a footnote to the above passage, the Court of Appeals noted the State's argument that North Carolina law permits a presumption of guilt of forgery from proof alone of possession of a forged instrument coupled with efforts to cash or otherwise use it. The Court rejected this argument, however, on two grounds. First, it appeared from the record that the jury in that case was not instructed to use such a presumption. Secondly, the Court noted that "the constitutional sufficiency of the evidence in this case under the test of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), would not be affected by the existence of such a general presumption, whether of legislative or judicial creation." 670 F.2d at 1352. The Court of Appeals then cited three Supreme Court decisions wherein convictions based upon presumptions had been reversed on the grounds that the presumptions used were unconstitutional.[5] In one of those cases, *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), the Supreme Court held that

> "[t]he upshot of *Tot, [United States v.] Gainey* [,380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965) ], and *Romano* is, we think, that a criminal statutory presumption must be regarded as "irrational" or "arbitrary," and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." 395 U.S. at 36, 89 S.Ct. at 1548.

In *Leary*, the petitioner was arrested because there was a small quantity of marijuana found in his automobile. He was charged with knowingly transporting and facilitating the transportation and concealment of marijuana which had been illegally imported. The presumption employed at trial provided that a possessor of marijuana

is deemed to know of its unlawful importation unless the defendant explains the possession to the satisfaction of the jury. The Court, in considering whether "it can be said with substantial assurance that one in possession of marihuana is more likely than not to know that his marihuana was illegally imported," imagined five possible ways in which a possessor might acquire such knowledge and determined that for each of the five possibilities, it was also likely that the majority of possessors had no knowledge of the drug's origin. *Leary*, 395 U.S. at 46–52, 89 S.Ct. at 1553–57. The Court thus found it impossible to conclude that at least a majority of possessors had learned about the foreign origin of the drug they possessed. 395 U.S. at 52, 89 S.Ct. at 1556.

In Petitioner's case, the facts proved he uttered a forged check, but there was no evidence that he himself created the forged document. Nor is there any evidence that Petitioner was in sole possession of the check from the time it was stolen to the time it was uttered. To the contrary, the uncontradicted evidence presented by Petitioner and another defense witness at trial indicated that the check was forged after Ms. Smith took possession of the unsigned check and went into a friend's house while Petitioner waited outside.

Even if the jury disbelieved all of the defense evidence on this point, as they were entitled to do, it cannot be said with "substantial assurance" that the presumed fact—that the forgery was committed by Petitioner—is more likely than not to flow from the proved fact upon which it is made to depend—Petitioner's utterance of the forged check. *Leary, supra.* There are simply too many other possibilities and unknown factors on the question of who actually forged the check.

In accordance with the principles set forth in *Sneed, supra,* the presumption employed in the instant case does not affect the insufficiency of the evidence presented

5. The cases cited by the Fourth Circuit were, *United States v. Romano*, 382 U.S. 136, 140–44, 86 S.Ct. 279, 281–83, 15 L.Ed.2d 210 (1965); *Leary v. United States*, 395 U.S. 6, 36 n. 64, 89 S.Ct. 1532, 1548 n. 64, 23 L.Ed.2d 57 (1968); and *Tot v. United States*, 319 U.S. 463, 466–67, 63 S.Ct. 1241–1244, 87 L.Ed. 1519 (1943).

by the prosecution at trial. Without the benefit of the presumption, the government failed to meet its burden of proving every element of the forgery charge beyond a reasonable doubt. As discussed above, there was no evidence offered at trial which tended to show that Petitioner falsely made the check, only evidence that he uttered a forged check. Although Petitioner knew that the check was forged, he was not charged with aiding and abetting in the forging of a check, but with the forgery itself. To paraphrase the Court in *Jackson*, the constitutional necessity of proof beyond a reasonable doubt is not confined to those defendants who are morally blameless; under our system of criminal justice, even an utterer is entitled to complain that he has been unconstitutionally convicted and imprisoned as a forger. 443 U.S. at 324, 99 S.Ct. at 2791.

Petitioner has been punished for the crime the State has proved against him— uttering a forged document. The fact that forgery is a discreet crime, often carried out with few or no witnesses to the actual making of the forged document, does not justify the State's use of a presumption which simply hangs a forgery conviction around the neck of the person, or any person, who happens to come into possession of a forged document and attempts to utter it. If the State is concerned that Petitioner has not been punished enough for the crime which has been proven against him, then it is free to increase the statutory penalty for uttering a forged document. But holding Petitioner guilty of the separate crime of forgery with insufficient evidence that he in fact committed that separate crime, by the use of a mere presumption, does not comport with due process. And despite the many states which have long relied upon this presumption, it cannot be used to support the forgery conviction in this case.

In *United States v. Owens*, 460 F.2d 467 (5th Cir.1972), the United States Court of Appeals for the Fifth Circuit in a similar case reversed a forgery conviction wherein the government had relied on a presumption to prove the situs of the act of forgery for jurisdictional purposes. At the conclu-

sion of his opinion, Judge Goldberg provided an observation which is equally applicable here: "Rid ourselves of forgers we must, but let our convictions be forged by law and not counterfeited with irrational inferences and irrelevant presumptions." 460 F.2d at 471.

Consequently, this Court finds that the use of the presumption in this case was error, that it unconstitutionally shifted the burden of proof to Petitioner in violation of his rights to due process, and that his conviction on the forgery count must be reversed.

### B. Procedural Default

The State raises procedural default as a defense to claim 3(f). In claim 3(f), Petitioner alleges that the trial judge erred when he instructed the jury that proof that Petitioner possessed a forged instrument or attempted to obtain money or an advance on it raises a presumption that Petitioner either forged the instrument or consented to the forgery of the instrument because the instruction created a mandatory presumption and improperly shifted the burden of proof to Petitioner, in violation of his due process rights.

Citing the North Carolina Court of Appeals' decision in this case, Respondent states that Petitioner's failure to object to the challenged instruction at trial bars him from challenging the instruction on appeal, pursuant to N.C.R.App.P. 10(b)(2), unless the alleged error constituted "plain error." The Court of Appeals held that Petitioner had procedurally defaulted and also found that "there was no plain error in Petitioner's trial." *Answer* at 7.

It is clear from the record that Petitioner has procedurally defaulted on this claim. Consequently, federal habeas review is barred by this default absent a showing of cause and prejudice, unless a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed. 2d 594 (1977). As discussed above, the State failed to prove that Petitioner was

guilty of the crime of forgery, and it appears from the record that the unconstitutional use of the presumption in this case has resulted in the conviction of one who is actually innocent. Consequently, federal review of this claim is not barred by Petitioner's procedural default.

## IV. RECOMMENDATION

Based on the foregoing reasons, the undersigned recommends

(1) that the Court grant Petitioner's motion to withdraw all unexhausted claims and proceed only on the exhausted claims in accordance with *Rose v. Lundy*, 455 U.S. 509, 520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982); and

(2) that the Court herewith grant the request for a Writ of Habeas Corpus and order Petitioner's immediate release.

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Failure to file objections to this Memorandum with the district court will preclude the parties from raising such objections on appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.), *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).